UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDELL DAVIS, | : | CIVIL ACTION NO. 3:CV-17-0559 |
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| TIMOTHY PFIRMAN, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff, Wendell Davis, an inmate formerly confined in the Allenwood Federal Correctional Institution, ("FCI-Allenwood"), White Deer, Pennsylvania[1], filed the above captioned action pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). Plaintiff alleges inadequate medical treatment, in violation of the Eighth Amendment. The only named Defendant is Timothy Pfirman, FCI-Allenwood Physician Assistant.

Presently pending before the Court is Defendant Pfirman's motion to dismiss. (Doc. 13). Defendant seeks dismissal of the Plaintiff's complaint on the sole basis that it is filed beyond the applicable statue of limitations. The motion is fully briefed and ripe for disposition. For the reasons that follow, the Court will deny Defendant's motion to dismiss.

---

[1] Plaintiff is currently housed in the United States Penitentiary Coleman I, Coleman, Florida.

I.      **Standards of Review**

   A.  **Bivens Standard**

The majority of Plaintiff's claims are filed pursuant to 28 U.S.C. § 1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir.1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D. Pa.1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa.1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D.

Pa.1992); Sharpe v. Costello, 2007 WL 1098964, *3 (M.D. Pa., 2007).

B. **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6)

dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

## II. **Allegations in Complaint**

Plaintiff claims that on December 3, 2014, he was sitting in the television room on Unit 2A, when "a federal inmate seriously assaulted him". (Doc. 1, complaint). He states that "the assault lasted approximately five (5) minutes, to which resulted in the plaintiff being found be federal officials (officers Prutzman, Sudul, Emerick) unconscious." Id.

Plaintiff alleges that he was "left in a room in the medical department, untreated for a period of approximately two (2) hours by the defendant" and that Plaintiff "was asked repeated questions based on his consciousness and pain level to which he could not answer correctly because of his cognizance state of mind." Id. Plaintiff was given "approximately four (4) sutures to his upper outer lip area and provided pain medication and told to make sick call." Id.

4

On December 4, 2014, Plaintiff "complained of lightheadedness, dizziness and pain" and "requested to see someone from the medical department." Id.

On December 5, 2014, Plaintiff "collapsed in the cell from syncopal episode while having a bowel movement." Id. The Plaintiff reported "becoming lightheaded, nauseated and diaphoretic and fell to the floor striking the back of [his] head." Id. The Plaintiff was "medically evaluated in medical and referred to the local emergency department for further evaluation and diagnostics, where he received laboratory studies and a CT scan of his head." Id.

Between December 6, 2014 and December 15, 2014, Plaintiff "complained about not feeling his normal self, having pain in the head, dizzy spells often, nausea, vomiting and constipation." Id. The Plaintiff "was provided pain medication and told to continue to make sick call." Id. He claims that "his request for MRI was ignored." Id.

On January 5, 2015, Plaintiff "collapsed again in his Special Housing Unit cell, and was taken to an outside hospital, to perform an outpatient MRI of his brain." Id. Plaintiff states that the results of the MRI revealed "relatively symmetric and extensive subacute to chronic bilateral subdural hematomas .. caused by the December 3, 2014 assault and the Dec. 5 and 15, 2014 collapses." Id. Based on these findings, Plaintiff "was then admitted at an outside hospital

facility for further evaluation and intervention." Id. Later than evening, "after a neurosurgeon evaluations, it was determined the plaintiff required urgent evacuation of the hematomas in the plaintiff's brain." Id. Plaintiff was then "admitted for a total of five (5) days and discharged on January 10, 2015 back to FCC-Allenwood." Id.

Plaintiff remained in Special Housing until the investigation by prison officials was complete. Id. On January 15, 2015, he was "released to general population, where he later learned the inmate that assaulted him did in fact hit him in the face and back of the head area with a lock in hand attached to his finger." Id.

On March 3, 2015, Plaintiff filed Administrative Remedy No. 812378-F1, complaining of inadequate medical treatment resulting from the December 3, 2014 assault and subsequent collapses. (Doc. 1 at 66, Rejection Notice). On that same date, Plaintiff's remedy was rejected as untimely, stating that "institution and CCC requests (BP-09) must be received w/20 days of the event complained about. Id.

On May 20, 2015, the Regional Office rejected Plaintiff's appeal of Administrative Remedy No. 812378-F1, stating that "you had 20 days from the date of the incident to file your BP9" and the office "concurs with rationale of regional office and/or institution for rejection", as well as, "follow directions provided on prior rejection notices". (Doc. 1 at 56, Rejection Notice).

On July 14, 2015, the Central Office rejected Plaintiff's appeal of Administrative Remedy No. 812378-F1, advising as follows:

> When deciding whether to reject appeals coordinators should be flexible, keeping in mind that major purpose of this program is to solve problems and be responsive to issues inmates raise. Consideration should be given to accepting an appeal that raises a problematic issue, such as medical treatment, even though that submission may be somewhat untimely. Inmate Davis started the informal resolution process on 2-4-2016, which is only 30 days after he had emergency brain surgery. If you provide a complete BP-9 package to the Regional Officer, they "should" accept your appeal. Make sure you include a copy of this response with you resubmission to the institution.

(Doc. 1 at 58, Rejection Notice).

On August 10, 2015, Plaintiff re-filed Administrative Remedy No. 812378-F1 (renamed No. 812378-F2). (Doc. 1 at 43, Administrative Remedy Response).

By Response dated August 18, 2015, the Warden denied Plaintiff's administrative remedy, finding that the medical care delivered was appropriate. Id.

On October 14, 2015, the Regional Officer denied Plaintiff's appeal of Administrative Remedy No. 812378-F2, finding that there was no evidence to support Plaintiff's allegations of inadequate medical care by the medical staff. (Doc. 1 at 45, Response).

On March 30, 3017, Plaintiff filed the instant action in which he alleges that Defendant Pfirman was deliberately indifferent "by failing to take into account the

7

symptoms of Plaintiff's initial head injury on December 3, 2014" and "the symptoms that caused [Plaintiff's] first collapse two days later", as well as for failing to "request the correct procedure of an MRI and not a CT scan." Id. For relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. Id.

### III.  Discussion

A federal court must apply the appropriate state statute of limitations, which governs personal injury actions, when reviewing a Bivens styled complaint. Peraza v. Helton, No. 3:CV-12-1306, 2016 WL 6442254, *3 (M.D. Pa. Nov. 1, 2016) (citing to Wilson v. Garcia, 471 U.S. 261, 276 (1985)

In Pennsylvania, the statute of limitations for a personal injury action is two years. See 42 Pa. C.S. § 5524. However, the date when a cause of action accrues is still a question of federal law. Smith v. Wambaugh, 887 F.Supp. 752, 755 (M.D. Pa. 1995). Under federal law, a civil rights cause of action accrues, and the statute of limitations begins to run, when the plaintiff "knew or should have known of the injury upon which [the] action is based." Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998). The limitations period begins to run if a plaintiff has sufficient notice to place him on alert of the need to begin investigating. Gordon v. Lowell, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000). Under

8

Gordon, a "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Id. The statute of limitations is tolled while an inmate plaintiff exhausts his administrative remedies. See Pearson v. Sec'y Dep't of Corr, 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies.").

Defendant concedes that Plaintiff's cause of action accrued on January 15, 2015, the date Plaintiff learned from other inmates that he had been unconscious in Health Services and allegedly left untreated for two hours. (Doc. 14 at 5). Consequently, the clock for filing a civil rights action began on January 15, 2015, and Plaintiff had until January 15, 2017, to timely file a civil rights action. On August 10, 2015, Plaintiff re-filed Administrative Remedy No. 812378-F1, (renamed No. 812378-F2), which was accepted and addressed on the merits by the Warden. See Spada v. Martinez, No. 13–4205, 2014 WL 4056924, at *3 (3d Cir. Aug.18, 2014) (" '[T]he exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority.' ") (quoting Hill v. Curcione, 657 F.3d 116, 225 (2d Cir.2011)) (citing Camp v. Brennan, 219 F.3d 279, 281 (3d Cir.2000)). He then appealed the denial of this administrative remedy to the Regional Office, where it

was denied on October 14, 2015. Assuming, without deciding, that Plaintiff properly appealed to the BOP General Counsel for final administrative review, Plaintiff would have satisfied the procedural rules regarding exhaustion and would be entitled to statutory tolling while he exhausted his administrative remedies. However, such question of fact cannot be resolved on the basis of the allegations contained in Plaintiff's complaint. Suffice it to say, however, that Plaintiff's complaint contains sufficient allegations to survive Defendant's motion to dismiss. Thus, Defendant's motion to dismiss will be denied, as further expansion of the record is necessary to determine whether Plaintiff has fully complied with the procedural rules regarding exhaustion, and is entitled to statutory tolling while he exhausted administrative remedies. A separate Order will be issued.

Dated: January 29 , 2018        /s/ William J. Nealon
                                **United States District Judge**

# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDELL DAVIS, | : | CIVIL ACTION NO. 3:CV-17-0559 |
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| TIMOTHY PFIRMAN, | : | |
| Defendants | : | |

# ORDER

**AND NOW, THIS 29th DAY OF JANUARY, 2018**, for the reasons set forth in the Memorandum of this date, **IT IS HEREBY ORDERED THAT:**

1. Defendant's motion to dismiss Plaintiff's complaint as barred by the statute of limitations is **DENIED.**

2. Within twenty (20) days of the date of this Order, Defendant shall file an answer, or other responsive pleading.

                                       /s/ William J. Nealon
                                       **United States District Judge**