# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WENDELL DAVIS,** : | |
| : | |
| **Plaintiff** : | CIVIL ACTION NO. 3:17-0559 |
| : | |
| v : | |
| : | (JUDGE MANNION) |
| **TIMOTHY PFIRMAN,** : | |
| : | |
| **Defendants** | |

## MEMORANDUM

## I. Background

Plaintiff, Wendell Davis, an inmate currently confined in the Federal Correctional Institution, Coleman, Florida, filed the above captioned Bivens[1] action pursuant to 28 U.S.C. §1331. (Doc. 1). Davis complains of events which occurred at his former place of confinement, the Allenwood Federal Correctional Institution, (FCI-Allenwood), White Deer, Pennsylvania. Id. The only named Defendant is Timothy Pfirman, FCI-Allenwood Physician Assistant. Id. Plaintiff claims that Defendant Pfirman was deliberately indifferent to his medical needs "by failing to take into account the symptoms noticed of the Plaintiff's initial head injury on December 3, 2014, the symptoms that caused his first collapse two days later" and to "request the

---

[1] Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

correct procedure of an MRI and not a CT scan." Id. Additionally, Plaintiff claims that his "Eighth Amendment rights were affected when the defendant ignored the Plaintiff in pain, caused by the December 3, 2014 injury (assault), failed to place the Plaintiff in a cell that could be monitored by medical staff after being found unconscious." Id. For relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief "ordering the Defendant and his employers to correct the Plaintiff's medical records so that he receives the proper medical care in a medical facility." Id.

Presently before the Court is Defendant Phirman's motion for summary judgment. (Doc. 18). Although Plaintiff was afforded two opportunities to file a brief in opposition to Defendant's motion for summary judgment (see Docs. 25, 32), Plaintiff has neither filed a brief in opposition, nor requested additional time within which to do so. Thus, for the reasons that follow, Defendant's motion for summary judgment will be granted as unopposed.

## II. Standards of Review

### A. Bivens Standard

Plaintiff's claims are filed pursuant to 28 U.S.C. §1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question

jurisdiction pursuant to 28 U.S.C. §1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. §1983 and the same legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D.Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D.Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D.Pa. 1992).

## B. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of

4

materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

**III. Statement of Facts[2]**

On December 3, 2014, Davis was assaulted at FCI-Allenwood by another inmate. (Doc. 21-1 at 126-133, Bureau of Health Services Clinical Encounter). After the assault, Davis was transported to the Health Services Department at FCI-Allenwood, the staff contacted PA Pfirman to inform him of the injuries sustained by Davis, and PA Pfirman reported to FCI-Allenwood to examine and treat Davis. Id.

The injuries sustained by Davis during the assault were recorded in a Clinical Encounter dated December 3, 2014, which included a 6 millimeter (mm) laceration on the inner mucosa of the right upper lip, a 12 mm laceration at the right upper lip passing through the vermillion border, and a knot on the

---

[2]Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall included a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement (Doc. 21) will be deemed admitted.

back of his head. Id. Davis also had slight amnesia right after the assault and a mild headache. Id. PA Pfirman also recorded that Davis denied having nausea, vomiting, vision changes, numbness, any neuro deficit, and that he appeared well alert and oriented. Id. PA Pfirman further noted in the evaluation on December 3, 2014, the following: Davis' head seemed tender, was swollen, and displayed trauma, he did not have any sinus tenderness, battle signs, raccoon eyes, ecchymosis, that his extraocular movements and neurologic orientations were both intact. Id.

PA Pfirman diagnosed Davis with a concussion, an open wound on his right upper outer lip which was sutured and prescribed him 325 Milligrams (MG) of Acetaminophen to take every four hours for two days as needed. Id. Davis was discharged back to the Special Housing Unit (SHU) with instructions to alert the SHU staff if his condition worsened. Id. PA Pfirman also instructed the SHU staff to observe Davis for any changes to his mental health and to wake him up every two hours for monitoring. Id.

On December 5, 2014, Davis fainted while using the bathroom in his cell and was brought to the Health Services Department for further evaluation. (Doc. 21-1 at 123-125, Bureau of Health Services Clinical Encounter). While Davis was being evaluated by PA Pfirman, Davis stated that while he was having a bowel movement he became lightheaded, nauseated, and

diaphoretic. Id. It was further noted that Davis told PA Pfirman that he was feeling better but still had a headache. Id. Out of an abundance of caution, PA Pfirman referred Davis to the Evangelical Community Hospital, in Lewisburg, Pennsylvania for a CT scan. Id.

On December 5, 2014, Davis was examined at Evangelical Community Hospital, reported to the Emergency Department staff that he "struck his head on the floor during the syncope" epidsode and a CT scan was performed on his head. (Doc. 21-1 at 81, 89, 100, 117). The medical professionals at Evangelical Community Hospital reported that the CT scan revealed that "there is no acute intracranial hemorrhage or extra-axial fluid collection. Id. The medical professionals at Evangelical Community Hospital did indicate a "small lacunar infarct just lateral to the right caudate head, age indeterminate." Id. The medical professionals at Evangelical Community Hospital recommended that "further evaluation could be considered with a MRI if there is a further clinical concern of recent event of ischemia, which is a lack of adequate blood flow to an organ. Id.

On December 12, 2014, Dr. Elizabete Santos, the clinical director at FCI-Allenwood, reviewed the results of Davis' CT scan performed by Evangelical Community Hospital on December 5, 2014. Id. Dr. Santos further noted that Davis has had no focal symptoms since his fall on December 5,

2014. Id. Dr. Santos also noted that Davis has had hyperlipidemia and high blood pressure for years, so it is likely that he has a "small vessel ischemic changes" to his brain. Dr. Santos concurred in proceeding with MRI, which "will be more specific in identifying ischemic brain changes." (Doc. 21-1 at 79).

On December 15, 2014, PA Beth Zalno noted in a clinical encounter that while on rounds in the SHU, Davis reported that for the last 12 days he was nauseated, was vomiting, had the chills, headaches, and he expressed a fear of fainting while using the bathroom. (Doc. 21-1 at 58-61, Health Services Clinical Encounter). PA Zalno also noted that Davis had a decreased appetite, he appeared healthy, and counseled him on the importance of staying hydrated. Id. PA Zalno prescribed Davis 325 MG of acetaminophen, instructed him to take it three times a day for seven days, to alert medical if his condition worsened, and referred Davis to FCI-Allenwood's Psychology Department. Id.

On December 16, 2014, Davis was seen by Dr. Camp in the Psychology Department at FCI-Allenwood and it was determined that he was without acute distress or a need for ongoing psychology services. (Doc. 21-1 at 77, Psychology Services Clinical Intervention - Clinical Contact).

On December 17, 2014, during SHU rounds, Davis informed Dr. Camp

that he was feeling much better. (Doc. 21-1 at 76, Psychology Services - Behavioral Observation).

On December 23, 2014, Dr. Camp reported that neither Davis nor the SHU staff had concerns regarding Davis' mental health or any other issues. (Doc. 21-1 at 75, Psychology Services - SHU Review).

On January 5, 2015, Davis was transported to Evangelical Community Hospital for an MRI. (Doc. 21-1 at 57, Clinical Encounter - Administrative Note). Evangelical Community Hospital informed Dr. Santos that the MRI detected that Davis had "bilateral subdural hematomas with mass effects on both hemispheres", and that Davis needed to be seen by neurosurgery as soon as possible. Id.

On January 5, 2015, PA Micki Powanda referred Davis to a hospital in Williamsport, surgery was performed on Davis to evacuate subdural hematomas, and the surgery was not performed by government medical professionals. (Doc. 21-1 at 54, Clinical Encounter).

On January 7, 2015, Dr. Santos noted in a clinical encounter that Davis underwent bilateral craniotomies to evacuate subdural hematomas. (Doc. 21-1 at 52, Clinical Encounter - Administrative Note). Dr. Santos also noted that Davis was doing well, he was alert, oriented, ambulatory, and was expected to be discharged from Evangelical Community Hospital on January 9, 2015.

Id.

On January 10, 2015, Emergency Medical Technician (EMT) Jeffrey Secor noted in a clinical encounter that Davis had returned from Evangelical Community Hospital, was returned to the SHU, and was assigned a lower bunk. (Doc. 21-1 at 48, Clinical Encounter - Administrative Note). EMT Secor also noted that Davis was prescribed Acetaminophen/Codeine for pain relief, that Davis was placed on daily wound care until the surgical staples got removed, and Davis was provided post operative instructions on how to keep the staple area clean and dry. Id.

**IV.     Discussion**

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of

pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice

does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key

question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

The undisputed record before this Court demonstrates that Plaintiff received substantial medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Specifically, Plaintiff was immediately evaluated by the medical department, after being assaulted on December 3, 2014. PA Pfirman diagnosed Davis with a concussion, an open wound on his right upper outer lip which was sutured and prescribed him 325 Milligrams (MG) of Acetaminophen to take every four hours for two days as needed. Davis was discharged back to the Special Housing Unit (SHU) with instructions to alert the SHU staff if his condition worsened. PA Pfirman also instructed the SHU staff to observe Davis for any changes to his mental health and to wake him up every two hours for monitoring. Id.

On December 5, 2014, Davis was evaluated by PA Pfirman after having fainted while using the bathroom in his cell. Upon Davis conveying that he became lightheaded, nauseated and diaphoretic, while having a bowel movement, PA Pfirman immediately referred Davis to an outside medical facility for a CT scan. The medical professionals at Evangelical Community

Hospital reported the findings of the CT scan to Health Services and did not recommend any further evaluation unless "any further clinical concern of recent event of ischemia".

On December 12, 2014, Dr. Santos, the clinical director, at Health Services reviewed, concurred with these recommendations, and also noted that Davis had had no focal symptoms since his fall on December 5, 2014. Dr. Santos further noted that based on Davis' medical history that he is likely to have "small vessel ischemic changes" to his brain. PA Pfirman then had no further interaction with Davis, as Davis was later seen and evaluated by Dr. Camp, other PA's, and, finally, on January 5, 2015, received and MRI at Evangelical Community Hospital, where he was later operated on for subdural hematomas.

There is no indication in the record that any time, medical treatment was denied or intentionally withheld. Plaintiff, was at all times, thoroughly examined, and immediately recommended for testing based on his symptoms.

At best, the record demonstrates Plaintiff's disagreement with the type of treatment rendered. However, his mere disagreement with the course of action that the medical department took based on the symptoms he presented, is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105–06 (in the medical

context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)). This is particularly so in light of the fact that there are no facts of record that demonstrate that Defendant, PA Pfirman intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse.

Even holding Plaintiff's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. Davis does not suggest, nor does the record support, that Defendant, PA Pfirman was aware that there was an excessive risk to his health or safety but wantonly refused to provide him medical care. Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004) (stating that while a *pro se* complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it). Thus, Plaintiff's complaint amounts to nothing more than Plaintiff's subjective disagreement with Defendant, PA Pfirman's treatment decisions, in particular, not to order an MRI. However, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White, 897 F.2d at 110.

Thus, the Plaintiff has failed to present evidence from which a

context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)). This is particularly so in light of the fact that there are no facts of record that demonstrate that Defendant, PA Pfirman intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse.

Even holding Plaintiff's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. Davis does not suggest, nor does the record support, that Defendant, PA Pfirman was aware that there was an excessive risk to his health or safety but wantonly refused to provide him medical care. Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004) (stating that while a *pro se* complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it). Thus, Plaintiff's complaint amounts to nothing more than Plaintiff's subjective disagreement with Defendant, PA Pfirman's treatment decisions, in particular, not to order an MRI. However, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White, 897 F.2d at 110.

Thus, the Plaintiff has failed to present evidence from which a

context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)). This is particularly so in light of the fact that there are no facts of record that demonstrate that Defendant, PA Pfirman intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse.

Even holding Plaintiff's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. Davis does not suggest, nor does the record support, that Defendant, PA Pfirman was aware that there was an excessive risk to his health or safety but wantonly refused to provide him medical care. Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004) (stating that while a *pro se* complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it). Thus, Plaintiff's complaint amounts to nothing more than Plaintiff's subjective disagreement with Defendant, PA Pfirman's treatment decisions, in particular, not to order an MRI. However, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White, 897 F.2d at 110.

Thus, the Plaintiff has failed to present evidence from which a

reasonable jury could conclude that the Defendant, PA Pfirman possessed the culpable mental state necessary for Eighth Amendment liability to attach. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d at 346; West v. Keve, 571 F.2d at 161. Indeed, the extent and quality of medical attention that was provided to Plaintiff precludes a finding of deliberate indifference.

**V.     Conclusion**

Based upon the record before this Court, Defendant, PA Pfirman is entitled to summary judgment with respect to Plaintiff's Eighth Amendment medical claim. An appropriate order shall issue.

               s/ *Malachy E. Mannion*
       **MALACHY E. MANNION**
       **United States District Judge**

**Dated: September 28, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0559-01.wpd